UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | NO. 1:22-CR- |
| | ) | |
| v. | ) | (J.            ) |
| | ) | |
| **MELINDA BIXLER**, | ) | |
| Defendant. | ) | |

## INFORMATION

### COUNT ONE
(Engaging in monetary transactions in
property derived from specified unlawful activity)

THE UNITED STATES ATTORNEY CHARGES:

At times material to this Information:

1. MELINDA BIXLER was a resident of York, PA, in the Middle District of Pennsylvania.

2. MELINDA BIXLER operated two businesses—one for-profit, the other a non-profit—providing services to elderly clients who resided in the Middle District of Pennsylvania and elsewhere. Both businesses operated from an office location at 4070 W. Market St. in York, PA, in the Middle District of Pennsylvania.

3. MELINDA BIXLER founded her for-profit company, Elder Healthcare Solutions, LLC, on or about May 19, 2010.

4. MELINDA BIXLER founded her nonprofit company, Adult Care Advocates, Inc., on or about January 16, 2015. According to the articles of incorporation filed with the Commonwealth of Pennsylvania, the mission of this non-profit entity was "to provide services associated with the needs of daily living, relocation, and geriatric care management to the elderly who cannot otherwise pay for or obtain such services."

5. From the time of its founding until about April 2017, Adult Care Advocates had little revenue or business activity. On or about April 2017, MELINDA BIXLER obtained control of over $813,473 in funds that were left to Adult Care Advocates through a charitable donation.

6. On or about June 2017, MELINDA BIXLER purchased the property located at 4070 W. Market St. for approximately $200,000. She agreed to pay the prior owners for this property with a down payment, followed by monthly installment payments, which were scheduled to continue for a 10-year term.

7. Once Adult Care Advocates became active, MELINDA BIXLER's two companies provided various services to their elderly client

populations. Among other things, the companies cleaned out clients' homes when they moved into nursing homes or assisted living facilities, and they took over management of clients' finances.

8. MELINDA BIXLER had sole control over the finances of these two companies, and she earned income from both businesses. The primary difference was that Elder Healthcare Solutions charged clients directly for services provided, whereas Adult Care Advocates paid MELINDA BIXLER's compensation and for other expenses through donor funds, the vast majority of which came from the bequest that occurred on or about April 2017.

9. From on or about June 2010 until on or about January 2020, MELINDA BIXLER became financial power of attorney and health care power of attorney for various elderly individuals. These individuals included M.H., then a 94-year-old woman residing at a nursing home in Lancaster County, Pennsylvania.

10. M.H. appointed MELINDA BIXLER, doing business as Elder Healthcare Solutions, her power of attorney on May 7, 2018. The appointment form was signed by both M.H. and MELINDA

BIXLER. The form stated that the "agent," i.e., MELINDA BIXLER, would "[a]ct loyally for [M.H.'s] benefit, keeping [M.H.'s] funds separate from [her own]"; "[a]ct to avoid the creation of any conflict of interest that would impair [her own] ability to act impartially in [M.H.'s] best interest"; and "[a]ct with the care, competence, and diligence ordinarily exercised by Agents in similar circumstances." In the agent's acknowledgement, MELINDA BIXLER pledged, "I shall act in accordance with the principal's [i.e., M.H.'s] reasonable expectations to the extent actually known by me and, otherwise, in the principal's best interest, act in good faith and act only within the scope of authority granted to me by the principal in the power of attorney."

11. On or about November 8, 2018, MELINDA BIXLER began the process of obtaining a mortgage through York Traditions Bank. On or about the following day, MELINDA BIXLER paid a $35,000 deposit on the purchase of a single-family home located at 1625 Wyndham Dr in York, PA.

12. On or about December 10, 2018, MELINDA BIXLER forged a letter from the prior owners of the property located at 4070 W.

Market St. This letter stated, falsely, that "it was intended to serve as verification that the property . . . has been fully paid for and is owned solely by Melinda Bixler." In reality, MELINDA BIXLER was still making payments on the property at that time and continued doing so throughout the entirety of 2019. MELINDA BIXLER submitted this forged letter to York Traditions Bank in support of her mortgage application.

13. On or about December 11, 2018, MELINDA BIXLER obtained a false and fraudulent gift letter from her son, Z.B., who was then 21 years old. In this letter, Z.B. purported to gift MELINDA BIXLER $350,000 from "personal funds," which were "to be applied toward the purchase of the property located at: 1625 Wyndham Dr York, PA 17403-5927." The letter also falsely stated, "The funds given to the homebuyer were not made available to the donor from any person or entity with an interest in the sale of the property," when in fact the funds were made available by MELINDA BIXLER herself.

14. MELINDA BIXLER presented this gift letter to Z.B. for his signature, and he signed it; MELINDA BIXLER, as the borrower,

5

also signed the letter. The letter stated, "WARNING: Our signatures above indicate that we fully understand that it is a Federal Crime punishable by fine, imprisonment, or both to knowingly make any false statement concerning any of the above facts as applicable under the provision of Title 18, United States Code, Section 1012 and 1014."

15. MELINDA BIXLER submitted this false and fraudulent gift affidavit in support of her mortgage application at York Traditions Bank.

16. MELINDA BIXLER then engaged in a series of financial transactions to make it appear, falsely, that Z.B. had $350,000 in his custody and control:

   a. On or about January 4 – 5, 2019, MELINDA BIXLER wrote two checks from the bank account of Elder Healthcare Solutions which were payable to Z.B, in the amounts of $185,000 and $30,000, respectively. Those checks were then deposited into MELINDA BIXLER's own personal bank account at M&T Bank.

    b. On or about January 5, 2019, MELINDA BIXLER signed a check from M.H.'s personal checking account, which she had control over as M.H.'s power of attorney, made payable to Z.B. in the amount of $78,000. MELINDA BIXLER never documented the basis for this payment and never repaid this money to M.H. That check was also deposited into MELINDA BIXLER's own personal bank account at M&T Bank.

    c. On or about January 11, 2019, MELINDA BIXLER paid Z.B. $293,000.

    d. On or about that same date, Z.B. received a payment from Adult Care Advocates in the amount of $47,000.

    e. On or about January 15, 2019, Z.B. received a payment from Adult Care Advocates in the amount of $10,000.

17. MELINDA BIXLER was approved for and obtained a mortgage loan from York Traditions Bank through the use of the false and fraudulent gift affidavit that she obtained from Z.B. and the letter she forged regarding the property located at 4070 W. Market St.

18. On or about January 17, 2019, Z.B., acting at MELINDA BIXLER's direction, obtained an official check from M&T Bank in the amount of $350,000, payable to the settlement agent for MELINDA BIXLER's home purchase. The amount of this check represented the sum total of the transactions that MELINDA BIXLER had conducted to disguise the sources of the funds that were falsely represented as coming from Z.B.

19. On or about January 18, 2019, York Traditions Bank transferred by wire approximately $325,460.71 to the settlement agent for MELINDA BIXLER's home purchase. These funds represented the proceeds of the mortgage that MELINDA BIXLER had obtained through fraud.

20. On or about the same day, the settlement agent transferred by wire approximately $641,375.88 to the sellers of the property located at 1625 Wyndham Dr. This figure represented the amount due to the sellers after closing costs.

21. The total purchase price of the property located at 1625 Wyndham Dr. was $685,000.

22. MELINDA BIXLER later carried out a cash-out mortgage refinance on the property located at 1625 Wyndham Dr. When doing so, she used the proceeds of the cash-out to pay off the outstanding balance on the property located at 4070 W. Market St.

23. On or about January 18, 2019, in the Middle District of Pennsylvania, defendant MELINDA BIXLER knowingly engaged, attempted to engage, and caused others to engage, in a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the defendant did effect the payment of a sum of $641,375.88 in currency to R.J.S. and P.J.S. of York, PA for the purchase of a single-family home located at 1625 Wyndham Dr in York, PA, such property having been derived from specified unlawful activity, that is, bank fraud in violation of Title 18, U.S.C. Section 1344, false statements in a loan application in violation of Title 18, U.S.C. Section 1014, and laundering of monetary instruments in violation of Title 18, U.S.C. Section 1956,

All in violation of Title 18, United States Code, Sections 1957 and 2.

THE UNITED STATES ATTORNEY FURTHER CHARGES:

## FORFEITURE ALLEGATION

The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982.

Pursuant to Title 18, United States Code, Section 982, upon conviction of the offense in Count One of this Information, the defendant,

## MELINDA BIXLER,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982, any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to:

    a.    $129,357.01, which represents the balance in an M&T Bank account ending in 5570 and belonging to Adult Care Advocates Inc., a company under the exclusive control of MELINDA BIXLER; and

b. a single-family home located at 4070 W Market St, York, PA 17408, identified at Parcel Number 510001400510000000, more fully described as:

**ALL THAT CERTAIN** piece or parcel of land, with the improvements thereon erected, situate, lying and being in West Manchester Township, York County, Pennsylvania, described pursuant to a survey prepared by Gordon L. Brown, Registered Surveyor, dated August 25, 1971, drawing No. 0-389, as follows, to wit:

**BEGINNING** at an iron pipe on the South side of the Lincoln Highway at corner of land now or formerly of Harry L. Gerber; thence along the South side of the Lincoln Highway, North seventy-six (76) degrees thirty-one (31) minutes fifty (50) seconds East, a distance of one hundred and no hundredths (100.00) feet to an iron pipe at the Western line of land now or formerly of Howard F. Smith, Jr.; thence along the Western line of land now or formerly of Howard F. Smith, Jr.; South thirteen (13) degrees forty-seven (47) minutes forty (40) seconds East, a distance of two hundred thirty-eight and sixty hundredths (238.60) feet to an iron pipe at Lot No. 1; thence along line of Lot No. 1, South seventy-seven (77) degrees sixteen (16) minutes fifty (50) seconds West, a distance of ninety-seven and sixty-nine hundredths (97.69) feet to an iron pipe at the Eastern line of land now or formerly of Harry L. Gerber; thence along the Eastern line of land now or formerly of Harry L. Gerber, North fourteen (14) degrees twenty-two (22) minutes zero (00) seconds West, a distance of two hundred thirty-seven and thirty-five hundredths (237.35) feet to an iron pipe on the South side of Lincoln Highway and the place of BEGINNING.

> **IT BEING** the same premises which A.C.M., widower, by his Deed dated February 7, 1990, and recorded in the Office of the Recorder of Deeds in and for York County, Pennsylvania in Record Book 105-I, page 1118, granted and conveyed unto G.J.K. and A.H.K., husband and wife, Grantors herein.
>
> SUBJECT, NEVERTHELESS, to the conditions and restrictions as recorded in Plan Book V, page 8 and 12.
>
> AND the said Grantors hereby covenant and agree that they will SPECIALLY WARRANT AND FOREVER DEFEND the hereinabove described premises."

If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to 18 U.S.C. § 982.

JOHN C. GURGANUS
UNITED STATES ATTORNEY

By:

_____
RAVI ROMEL SHARMA
ASSISTANT U.S. ATTORNEY